In re Hannah Barry.

---

In the matter of the application of HANNAH BARRY, guardian of EMMA DONLON, an infant.

[Filed January 11th, 1901.]

1. The subject of the jurisdiction of chancery and the orphans courts over the estates of infants and the appointment of guardians therefor, and their powers in the premises, reviewed.

2. The court of chancery will not exercise jurisdiction to direct in advance the expenditure of the principal of the infant's possible estate for his maintenance, but will leave the question of the necessity of expenditure to the judgment of the guardian, subject to the supervision of the orphans court on the settlement of the accounts.

On petition.

*Mr. John J. Hoppin,* for the petitioner.

EMERY, V. C.

Petitioner is the guardian of the person and estate of Emma Donlon, her daughter by her first husband, an infant now seventeen years of age, appointed by the surrogate of Essex county within a year, and as such guardian has received $1,000, payable to the infant, as a beneficiary designated in a life insurance policy on the life of John Barry, petitioner's husband

In re Hannah Barry.

and the infant's stepfather. Neither petitioner nor her daughter have other property and they both work for a living, but the petitioner is now ill, and the daughter delicate, and at present able to earn little or nothing. The income of the fund is not sufficient for the infant's support and the application is for an order to use part of the principal for that purpose, and an order for an allowance of $20 per month of the principal is asked.

If the court acts on this application, the order which should be made on the petition setting out the above facts should be a reference to inquire into the facts and circumstances of the application, including the mother's capacity and ability. That the mother, as well as the father, is under obligation to support her infant children to the extent of her ability, was the conclusion reached by Vice-Chancellor Pitney in *Alling* v. *Alling, 7 Dick. Ch. Rep. 92 (1893)*, after exhaustive examination of the cases, and his decision on this point will be followed as establishing the proper rule. And it may also be said that the application by petition instead of by bill is proper, and that the application is one, which in view of the smallness of the estate and income, may be made without the formality of a bill. *In re Bostwick, 4 Johns. Ch. 100,* approved on this point in *Receiver* v. *First National Bank, 7 Stew. Eq. 450 (Vice-Chancellor Van Fleet, 1881)* ; *2 Dan. Ch. Pr. (6th ed.) 1357, 1358.*

But the important question in this case is the preliminary question as to assuming jurisdiction to fix in advance the allowance for the maintenance of a minor, to be paid by a guardian out of funds of the infant, held by him under a trust created by statute, and which are not held by the guardian under a trust for the infant, created by a will or other private document. The cases in which the court has hitherto exercised its general equity jurisdiction, as distinguished from its statutory jurisdiction, over the property of infants, seem to have been cases founded on its jurisdiction to direct trustees holding the property of the infant under express trusts, or on its jurisdiction over accounting by guardians or executors, where the circumstances were such as to make the settlement of the question of maintenance and allowance by an accounting before the orphans court, after the expenditures were made either inapplicable or insuffi-

cient. *Stephens* v. *Howard's Executor, 5 Stew. Eq. 244 (Vice-Chancellor Van Fleet, 1880)*, is an instance of the former class; and *Alling* v. *Alling, 7 Dick. Ch. Rep. 92 (Vice-Chancellor Pitney, 1893)*, is an instance of the latter class. A statement of the course of the decisions and statutes relating to the jurisdiction over the persons and over the property of infants will, I think, disclose the basis of the exercise of the powers of this court and the principles upon which the question must be settled. The existence of a general equity jurisdiction over the custody of the *persons* of infants has been finally settled in this state by the decision in *State (Baird, pros.)* v. *Torrey, 4 C. E. Gr. 481 (Errors and Appeals, 1868)*. This jurisdiction is placed by this decision upon the exercise by the chancellor as *parens patriæ* of a portion of the powers which in this capacity originally vested in the chancellor of England, as the representative of the king, to whom, as sovereign, in the character of *parens patriæ*, the duty of protecting infants was attributed. In England, the lord-chancellor (acting as a court of chancery), under this jurisdiction as *parens patriæ*, appointed guardians for infants, and also receivers for the management of their estates, and apparently without reference to the existence of any trust for the infants (*1 Spenc. Eq. Jur.* ¶ *611*), but this assumption of jurisdiction to appoint guardians was, in the opinion of Mr. Hargrave, originally an usurpation. *Ib. and note m; Co. Litt. 88 (b); note 19 (Harg. & But. ed.)*

In New Jersey, however, such general right to appoint a guardian for the persons and estates of an infant never existed in this court, and up to the passage of the Orphans Court act of 1784, the ordinary alone assumed and exercised the jurisdiction of appointing guardians of the persons and estates of orphan infants. *Graham* v. *Houghtalin, 1 Vr. 552, 560 (Errors and Appeals, 1863)*. The power of the ordinary and orphans court extended originally (and up to 1843) only to orphan infants, and it may be that the court of chancery, in the absence of any other proper authority, might have exercised the power of appointing a guardian for an infant entitled to property while the parents were living, but in *Graham* v. *Houghtalin, supra* (at *p. 564*), it was denied by Mr. Justice Vredenburgh that the lord-chancellor

of England had this power. This question, however, does not seem to have arisen, and there can be no doubt that under the settled judicial administration of this state a general guardian of the person and estate of an infant is to be appointed by the ordinary or orphans court under the statute and not by the court of chancery in the exercise of any supposed general power. Not only was the power of appointment of guardians over the person and estate of infants exercised by these courts alone, but the ordinary also originally exercised jurisdiction over the settlement of the accounts of guardians for the disposition of the property to which the appointment gave them title for the benefit of the ward. *Graham* v. *Houghtalin, supra* (at *p. 568*). The constitution of 1776 provided that "the governor be ordinary or surrogate-general," and by the act of 1784, defining the jurisdiction of the ordinary and establishing county orphans courts, the jurisdiction to grant letters of guardianship was confirmed in the ordinary, and the orphans court was also authorized to grant letters of guardianship to orphans under fourteen, the appointment of guardians for orphans over fourteen being by the ordinary. By the act of 1820 (*Rev. L. p. 776 § 27*), it was provided that the power and duties formerly exercised by the ordinary relative to the admission of guardians for persons under twenty-one years of age, should be thereafter exercised by the orphans court of the county in which the minor resided or had real or personal property, subject to an appeal to the prerogative court, but the right of the ordinary to grant letters of guardianship was not restrained "in case a convenience will arise from doing the same." The orphans court, by the same acts, was given jurisdiction over the allowance of the accounts of guardians. By the act of February 1st, 1799 (*Pat. L. p. 346*), relative to guardians, every testamentary or other guardian was directed to file an inventory with the clerk of the orphans court within three months after his appointment, and to exhibit annual accounts of the ward's estate,

"and if the personal estate and rents and profits of the real estate should not be sufficient for the maintenance and education of the ward, the orphans court was authorized, after full investigation, to sell such parts of the ward's lands as should be adequate for his maintenance or education."

In re Hannah Barry.

The act of February 22d, 1843, authorized the ordinary or the orphans court of the proper county, to appoint a guardian for a minor entitled to any property in the lifetime of the father, and by the revision of 1846 (*Rev. Stat. p. 374 § 6*), timber on the ward's land, as well as the land itself, was authorized to be sold by the guardian, under order of the orphans court, if the personal estate and rents and profits of the real estate were not sufficient for the maintenance and education of the ward. This latter provision is the law still in force. *Gen. Stat. p. 1616* ¶ *3.* After the first account, which is to be made at the end of a year, the guardian's accounts are now to be settled once in three years, and oftener if required (*Orph. Ct. Act. Rev. P. L. 1898 p. 757 § 115*), and the power of appointing guardians is in certain cases conferred upon the surrogate. *Ib. p. 728 § 36 et seq.* These statutes, taken together, show the development of a complete system of judicial administration with reference to infants and their estates, which conferred upon the orphans court the general power of appointing guardians of infant orphans, and the constant supervision over the guardian's management of the ward's estate by the provision for accounting. The provision for sale of the timber or lands of the orphan by direction of the orphans court, in case the personal estate is insufficient for its maintenance or education, implies that the personal estate, principal as well as interest, may be used for that purpose, if necessary, without application to the court, subject of course to its allowance in the settlement of the accounts, at which time the propriety of the expenditure could be questioned by the court or parties interested. And this has been the recognized practice on the settlement of the guardian's accounts in the orphans court, and the allowance of the expenditure out of principal for support and maintenance of the ward. *Pyatt* v. *Pyatt, 1 Dick. Ch. Rep. 285 (Errors and Appeals, 1889)*. In view, therefore, of these decisions which establish the right of the guardian to expend the principal of the personal estate, if needed for the ward's support, and to be allowed such expenditures in his final account, and in view of the convenient expeditious and inexpensive method provided by the statutes for bringing the question of the propriety of the expenditure before the orphans court in the fre-

quent settlement of accounts, the jurisdiction of the court of chancery to make an order in advance fixing the expenditure of principal should be guardedly exercised even if it exists in these cases. The intention of the legislature in establishing this summary and convenient method for the settlement of guardians' accounts, was clearly to avoid the necessity of resorting to the court of chancery for that purpose. And while the jurisdiction over guardians' accounts, under the general jurisdiction over trustees, undoubtedly still exists in some cases, an exceptional state of facts must be presented to call for its exercise, and the exercise of the jurisdiction must be based on the insufficiency or incompleteness of the orphans court's jurisdiction (which is only over the guardians' accounts), by reason of the particular circumstances, as was the case in *Alling* v. *Alling, supra*. The jurisdiction over the property of infants in the court of chancery, either to sell, mortgage or direct in advance its management by a guardian whose control over the property depends wholly on his appointment under the statute, should not be exercised unless it has been expressly conferred by statute, or is based upon the application of the general jurisdiction over trusts, and this jurisdiction over the guardian as a trustee is to be exercised only where the statutory provisions for the enforcement by the orphans court of the trust imposed by the statute upon the guardian are, under the special circumstances of the case, ineffective or insufficient for the infant's protection. This is the rule followed in reference to the exercise of the jurisdiction of the court over the accounts of executors and administrators. *Frey* v. *Demarest, 1 C. E. Gr. 236.* The general policy of the statutes and decisions in this state upon the question now presented, has been to leave the question of the necessity of the expenditure of the personal estate, both income and principal, to the judgment of the guardian, in the first instance, subject to affirmance of the orphans court on the settlement of his accounts, and in all ordinary cases this course (which has been followed for over a century) affords protection both to the guardian and the infant. No circumstances appear in the present case sufficient to withdraw the infant's property from the ordinary course of application and settlement, and the application must therefore be denied.